OPINION OF THE COURT
Joseph D. Mintz, J.
Petitioner instituted this Election Law proceeding by order to show cause granted by this court on August 31, 1993 seeking the invalidation of the petitions of independent candidates in the general election. Petitioner also raised the objections contained in his petition with the Board of Elections.
On August 17, 1993 respondents Amos, NeMoyer and Earl filed nominating petitions for the Office of University District Council member of the Common Council of the City of Buffalo, each representing an independent party. On August 31, 1993, petitioner, by his attorney, presented for signature an order to show cause, supported by his petition and various exhibits. The order to show cause provided for service by personal delivery to the respondents or by attachment of the papers to the door of the residence of each respondent. The date for the completion of service was blank. Upon presentment of the order to show cause to the court, petitioner’s attorney pointed out that that day, August 31, 1993, was the last day to commence the election proceeding, and that for that reason, an alternative service method was provided for. The court, not yet aware of the Fourth Department’s then-unreported decision in Matter of Ehle v Wallace (195 AD2d 1086), and desirous of ensuring meaningful service by personal delivery, *67 instructed petitioner’s counsel to file the order to show cause that day, thus ensuring commencement of the special proceeding under CPLR 304 within the 14-day Statute of Limitations, and to serve by personal delivery by September 4, 1993. Service by personal delivery was actually made on September 1,1993.
Respondents moved to dismiss the petition on timeliness grounds in that service was completed one day after the running of the 14-day Statute of Limitations. Respondents rely on the Fourth Department decision in Ehle (supra). In Ehle, the Fourth Department dismissed the petition under the Election Law, notwithstanding the filing provisions of CPLR 304 and 306-b.
Section 16-102 (2) of the Election Law provides in pertinent part: "A proceeding with respect to a petition shall be instituted within fourteen days after the last day to file the petition.”
Section 16-116 of the Election Law provides in pertinent part: "A special proceeding under the foregoing provisions of this article shall be heard upon a verified petition and such oral or written proof as may be offered, and upon such notice to such officers, persons or committees as the court or justice shall direct, and shall be summarily determined” (emphasis added). In Ehle (supra), the Court determined that the language of section 16-116 "and upon such notice * * * as the court or justice shall direct” is further restricted by case law to require that such notice be given prior to the running of the applicable Statute of Limitations, here, 14 days.
The line of cases cited by the Fourth Department which require service prior to the running of the applicable time period, and, more recently, Matter of Thompson v New York State Bd. of Elections (40 NY2d 814 [1976]), were all decided prior to the enactment of section 304. Before CPLR 304 was amended, the method of instituting a special proceeding was the service of the petition and notice of petition or order to show cause. The fact that under the law before commencement by filing, the date of service could not be beyond the Statute of Limitations is a tautology, supported by the entire breadth of law governing Statutes of Limitation under commencement by service. On the other hand, however, these cases cannot stand for the authority that service cannot occur outside the Statute of Limitations, where the proceeding was instituted by filing; that particular issue was never before the *68 Court of Appeals in Thompson, or in any case cited by the Fourth Department.
As the order to show cause demonstrates, it was clearly determined by this court that in order to commence the special proceeding, petitioner would have to first file the order to show cause and petition. CPLR 304 very clearly provides that "[a] special proceeding is commenced by filing a notice of petition or order to show cause with the clerk of the court in the county in which the special proceeding is brought.” Ehle (supra) is silent as to the method of commencement. There is no determination that CPLR 304 does not apply. Had the petitioner not filed the order to show cause and petition by August 31, 1993, presumably respondents could have and would have made a valid motion to dismiss for failure to commence the proceeding in a timely manner. CPLR 304, enacted after the enactment of section 16-102, is all-encompassing in scope and applies to all actions and special proceedings. There is no reason why CPLR 304 should not apply to election proceedings; rather there appears only to be an issue as to the time when service must be completed in order for the filing to constitute a valid commencement, i.e., the application of CPLR 306-b.
With respect to the application of CPLR 306-b, there have been significant reasons advanced for not permitting the generous service requirements (15 days from the running of the Statute of Limitations) and the revival allowances of CPLR 306-b (b) when election proceedings have such short Statutes of Limitation, and need to be decided so quicldy. For these reasons, wholesale application of CPLR 306-b to election proceedings would be wrong. However, all election proceedings must be commenced on such notice as "the court or justice shall direct”. The involvement of the court before service provides an additional assurance that the length of time provided for service will not be unduly long or generous under all of the circumstances including the length of the Statute of Limitations. For example, allowance of 15 days in order to complete service for an election matter governed by a three-day Statute of Limitations would undoubtedly be an abuse of discretion, and found improper upon review. On the other hand, an extra day of service to ensure meaningful delivery of the papers to the respondents on a 14-day Statute of Limitations might not be abuse of discretion. CPLR 2004 provides sufficient guidelines, "upon such terms as may be just and *69 upon good cause shown”, in order to appropriately review such decisions.
While this court is mindful of the Fourth Department’s decision in Ehle (supra) and that it binds this court, different circumstances exist here. First, this court made a fixed determination that CPLR 304 applied at the time of the signing of the order to show cause. Second, petitioner, through his attorney, asked for substituted service in order to complete service by August 31, 1993. This court required personal delivery and gave petitioner a short period of time in which to accomplish it for the express purpose of ensuring more meaningful service. In that such extension of time is not the extension of a Statute of Limitations, the proceeding having been commenced in a timely manner by the filing of the order to show cause and petition, this court hereby determines that such extension was permitted under CPLR 2004, and the respondent’s motion to dismiss is denied.
Petitioner has withdrawn those portions of his petition seeking invalidation of the respondents’ petitions on grounds of insufficient signatures. No remaining objections to respondent Amos’ petitions exist. That leaves objections to respondent Earl’s candidacy based upon (1) the color of the petitions; (2) the form of his acceptance, with respect to the expiration date of the Commissioner of Deeds who acknowledged his signature. Also left are objections to respondent NeMoyer’s candidacy based upon (1) the color of the petitions; (2) the form of his acceptance. The Board of Elections, on September 17, 1993, determined that Earl’s and NeMoyer’s acceptances were of incorrect form and rejected their petitions. Earl and NeMoyer cross-petitioned for validation. Petitioner cross-cross-petitioned to review the Board’s decision not to invalidate the petitions on color. The cross-cross-petition is duplicative of this issue on the petition; it will be considered as part of the petition. It should be noted, however, that petitioner was without right to cross-cross-petition on the basis of the Board’s determination within three days of that determination. Such an application is for the sole purpose of validating a petition, not invalidating one. (Matter of Godzisz v Mohr, 197 AD2d 839.)
With respect to respondent Earl, petitions were dismissed by the Board for the sole reason that the Commissioner of Deeds who acknowledged his signature had inserted the incorrect expiration date of his commission. Election Law § 6-146 governs acceptance. There are no specific require- *70 merits, but the certificate of acceptance must be acknowledged. The incorrect expiration date does not in any way invalidate the acknowledgment. (Executive Law § 142-a [1], [2] [d].) As the acknowledgment has full force and effect, and there are no other objections to his certificate of acceptance, the Board incorrectly invalidated his petitions based upon such defect. The certificate of acceptance is valid.
With respect to respondent NeMoyer, petitions were dismissed by the Board for the sole reason that his acceptance was of a form used for primary race candidates, rather than for general election candidates. Again, section 6-146 contains no specific requirements as to acceptances. Where there is no statutory prescription, only substantial compliance with forms are required. (Matter of Ruiz v Sachs, 43 NY2d 894 [1978].) The acceptance form used substantially complies with the requirements of section 6-146. The Board incorrectly invalidated his petitions based upon the acceptance. The certificate of acceptance is valid.
The only remaining issue is that raised by petitioner regarding the color of the petitions submitted by respondents Earl and NeMoyer. Respondent Earl’s petitions were on yellow paper and respondent NeMoyer’s petitions were on green paper. Election Law § 6-138 provides that such petitions "shall be on white paper”. No reported case on this requirement was found. However, the Court of Appeals in Matter of Flam v Hand (268 NY 619 [1935]) decided a case regarding color of paper under the predecessor to section 6-132 (4). Section 6-132 (4) provides: "In the city of New York, to be accepted for filing, petitions for each party shall be printed on paper of the color which the state board of elections has selected for such party.” In Flam, the candidate had used white paper for a petition for Democratic party nomination, for which green paper was required. The petition was not acceptable either on white paper or after green tinting of the paper.
The requirement of white paper contained in section 6-138 for independent petitions must be examined in light of section 6-132 (4). In the City of New York only, as required by section 6-132 (4), various party petitions are given different colors. A voter signing an independent petition could be confused if the petition was printed on paper of a color designating a particular party. It can only be assumed that astute voters in New York City might sign an independent petition on the mistaken assumption that the petition is for the party designated by the color of its paper. This could *71 create fraud or confusion, and should be strictly construed in New York City. However, in the City of Buffalo, no such designation is made by the color of the paper of the petition. There is no risk of fraud or confusion. Therefore, in the City of Buffalo, petitions on paper other than white substantially comply with the form requirements of section 6-138. (See, e.g., Matter of Ruiz v Saez, 68 NY2d 154 [1986].) Therefore, the nominating petitions are valid.
For the foregoing reasons, petitioner’s petition is dismissed and respondents’ cross-petition in granted. The decision of the Board of Elections is reversed and the nominating petitions of respondents Earl and NeMoyer are hereby validated.